[Cite as *State v. McDonald-Glasco*, 2018-Ohio-1918.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-368 |
| | | (C.P.C. No. 16CR-5691) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Tyrik M. McDonald-Glasco, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 15, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Nemann Law Offices, LLC,* and *Adam Lee Nemann*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1}  Defendant-appellant, Tyrik M. McDonald-Glasco, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty of one count of murder with a firearm specification and one count of intimidation of a crime witness.  For the following reasons, we affirm.

I.  Facts and Procedural History

{¶ 2}  By indictment filed October 13, 2016, plaintiff-appellee, State of Ohio, charged McDonald-Glasco with one count of murder in violation of R.C. 2903.02, an unspecified felony; one count of felony murder in violation of R.C. 2903.02, an unspecified felony; and one count of intimidation of a witness in a criminal case in violation of R.C. 2921.04, a third-degree felony.  Both murder charges carried accompanying firearm

specifications pursuant to R.C. 2941.145(A).  The state charged McDonald-Glasco's codefendant, Dajuan A. Crowely, with these same offenses except intimidation of a witness.  All charges related to the shooting death of Daegio D. Heron.  McDonald-Glasco entered a plea of not guilty.

{¶ 3}   At a jury trial beginning May 1, 2017, the state asked Anferny Slaughter to identify individuals from surveillance camera footage from the afternoon of October 2, 2016.  Slaughter identified himself, McDonald-Glasco, Taneja Williams, Tivon Green, and Dajuan Crowley, who goes by the nickname "Boobie."  The state then played the surveillance footage in court and asked Slaughter to describe what was happening in those images.

{¶ 4}   Slaughter testified that on the day Heron was killed, he was with Taneja near the Graham store.  There was a group of children outside the store, and Slaughter identified one of those children as one of the girls who would later witness the shooting.  Heron was also outside the Graham store that day.  Slaughter said he frequently bought marijuana from Heron.

{¶ 5}   On the afternoon of October 2, 2016, Slaughter said he and Taneja went to McDonald-Glasco's house on Hildreth Avenue, and when they arrived they joined McDonald-Glasco, Crowley, and Green.  Shortly after 3:30 p.m., Slaughter said Taneja told him that the group planned to fight Heron that day.  At that point, the group of five— Slaughter, McDonald-Glasco, Taneja, Crowley, and Green—went to the porch of an abandoned house on Greenway Avenue where they discussed their plan.

{¶ 6}   A short time later, Slaughter said Taneja called Heron under the guise of meeting him to purchase marijuana.  At that point, the five of them left the abandoned house.  Taneja walked up the street and turned down an alley where Heron was supposed to meet her, and McDonald-Glasco, Crowely, Green, and Slaughter went down Greenway Avenue and entered a different alley behind Heron's house.  Slaughter said the two alleys intersect in a "T" behind Heron's house.

{¶ 7}   Slaughter testified he rode ahead of the group on his bicycle to confirm whether Heron had arrived in the alley.  After spotting Heron, Slaughter returned and told Crowley, McDonald-Glasco, and Green that Heron was there.  When the three men entered the alley, McDonald-Glasco had put his hood up.

{¶ 8}   Slaughter testified that Taneja met with Heron in the alley, as planned, and then Taneja walked out of the alley.  At that point, Slaughter said he saw Green and Crowley walk up to Heron while McDonald-Glasco waited in the other alley in view of the others.  Slaughter testified that he was talking to two little girls in the alley when he heard a gun cock followed by someone saying "No, no, don't do that," and then the sound of two gunshots.  (Tr. Vol. 1 at 153.)  Shortly after that, Slaughter said he saw Green and Crowley run past him while Green put a gun in his pants and Crowley put a gun under his shirt.

{¶ 9}   Additional surveillance footage showed McDonald-Glasco walking out of the alley after the shooting.  After that, Slaughter said he returned to his aunt's house where he smoked marijuana with Taneja.  Surveillance video from the Graham store a few minutes after the shooting showed Green, Crowley, and McDonald-Glasco walking in the same general direction, although McDonald-Glasco was not walking with Green and Crowley.

{¶ 10}  Slaughter testified that when police first interviewed him, he lied about knowing anything about Heron's death because he was afraid of retaliation from Green.  However, Slaughter said he eventually agreed to testify truthfully in exchange for the state dismissing the murder charge against him.  Slaughter testified that when Heron was shot, Green, Crowley, and a third man in a white shirt were all in the alley with Heron, and that himself, McDonald-Glasco, and two little girls were nearby in the other alley within view of the shooting.

{¶ 11}  Michael B. Williams, Jr., a homeless Army veteran living on the streets of the east side of Columbus, testified he was in the alley when Heron was shot.  Michael identified a picture of Green as the shooter, and he said that at one point, Green pointed the gun at him.   Michael testified McDonald-Glasco was present when Green shot Heron.  Additionally, Michael said he also saw two little girls in the alley as well as a young man on a bicycle.  Michael testified that after the shooting, one of the men pointed a gun at the little girls and threatened them before everyone left the alleys.

{¶ 12}  Michael testified he did not immediately report what he had seen to police but, after speaking to Heron's girlfriend, he decided to come forward as a witness.  In a photo array, Michael identified Green and Crowley and told police he thought that McDonald-Glasco looked like the other person he saw in the alley the day of the shooting.

Aaron Mall, a detective with the Columbus Division of Police, testified about the identification procedure that Michael participated in.

{¶ 13} Shabie Flowers, Heron's girlfriend, testified that she lived with Heron at the corner of Greenway and Taylor Avenues in October 2016. Flowers testified Heron sold marijuana and performed electrical services work to make a living, often selling marijuana in the alley behind their house. Typically, Flowers said that people who wanted to buy marijuana from Heron would call Heron's phone, and then Heron would ride his bicycle out to the alley to complete the transaction. Flowers testified she knew McDonald-Glasco, Taneja, Crowley, and Slaughter from the neighborhood. However, Flowers said she did not know Green.

{¶ 14} Flowers testified she was at home when the shooting occurred. She said that after Heron left the house that day, she heard three loud, close gunshots, and she ran out of the house. The home security video showed Taneja and McDonald-Glasco leaving the alley, and Flowers said she asked McDonald-Glasco what he had just done. Flowers testified McDonald-Glasco responded, "I don't know. I got to get up out of here." (Tr. Vol. 2 at 392.) After that, Flowers said two little girls came running out the alley, screaming that three young men just killed Heron and threatened the little girls not to say anything.

{¶ 15} Flowers testified she grabbed her gun and ran down the alley to Heron, where she found him lying face down with a gunshot wound to the back of his head. Flowers said she turned Heron over and tried to revive him. She testified she removed everything from Heron's pockets. When police arrived, Flowers said she returned to her house and reviewed the home security videos, showing them to detectives. Within 15 minutes of the shooting, Flowers said her sister identified McDonald-Glasco on the video.

{¶ 16} The next day, Flowers said McDonald-Glasco rode by her house in a gold or bronze vehicle, rolled down the window, pointed a gun at her, and told her that if she kept talking, she would be next. Flowers testified she called the police, and they asked her to help identify the vehicle. Flowers said she identified a photograph of a vehicle that looked like the vehicle McDonald-Glasco was in when he threatened her.

{¶ 17} At the conclusion of the trial, the jury returned a not guilty verdict as to the first count of murder; however, the jury found McDonald-Glasco guilty of the murder as an aider and abettor charge, with accompanying firearm specification, as well as the charge of

intimidation of a witness. Following a May 10, 2017 sentencing hearing, the trial court sentenced McDonald-Glasco to an aggregate sentence of 18 years to life in prison. The trial court journalized McDonald-Glasco's convictions and sentence in a May 12, 2017 judgment entry. McDonald-Glasco timely appeals.

## II. Assignments of Error

{¶ 18} McDonald-Glasco assigns the following errors for our review:

[1.] The evidence upon which appellant's conviction is based is insufficient as a matter of law.

[2.] The trial court erred to the prejudice of appellant by instructing the jury on the offense of complicity to murder by aiding and abetting, as there was no evidence that appellant shared the criminal intent of the principal offender; accordingly, the evidence adduced at trial, viewed in a light most favorable to the prosecution, supports appellant's involvement only as an accessory after the fact, a crime not recognized in Ohio.

[3.] The verdicts were against the manifest weight of the evidence.

[4.] The trial court erred when it overruled appellant's motion for acquittal pursuant to Criminal Rule 29.

## III. First Assignment of Error – Sufficiency of the Evidence

{¶ 19} In his first assignment of error, McDonald-Glasco argues there was insufficient evidence to support his convictions.

{¶ 20} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

### A. Murder

{¶ 21} McDonald-Glasco was convicted of felony murder with the underlying felony being felonious assault. R.C. 2903.02(B) prohibits causing the death of another person as

a proximate result of committing or attempting to commit a first- or second-degree felony offense of violence. In turn, R.C. 2903.11(A)(2) prohibits a person from knowingly causing or attempting to cause physical harm to another by means of a deadly weapon. Moreover, R.C. 2923.03(A) provides, in pertinent part, that "[n]o person, acting with the kind of culpability required for the commission of any offense, shall * * * [s]olicit or procure another to commit the offense" or "[a]id or abet another in committing the offense." R.C. 2923.03(A)(1) and (2).

{¶ 22} Here, McDonald-Glasco argues there was insufficient evidence to establish his complicity in the murder through the aider and abettor theory. More specifically, McDonald-Glasco argues all the evidence tending to establish his involvement in the shooting was entirely circumstantial. However, "[c]ircumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." (Internal quotations omitted.) *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988).

{¶ 23} As the Supreme Court of Ohio has held, "to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 245-46 (2001). Additionally, "[s]uch intent may be inferred from the circumstances surrounding the crime." *Id.*

{¶ 24} Though McDonald-Glasco asserts there was insufficient evidence to show he participated in a "set up" to lure Heron into the alley, Slaughter testified in detail about McDonald-Glasco's participation in arranging for Heron to be present in the alley under the guise of selling marijuana so that the group could fight him. Additionally, Michael placed McDonald-Glasco in the alley at the time of the shooting. Considering this evidence in a light most favorable to the state, we conclude there was sufficient evidence to establish McDonald-Glasco's participation in Heron's death.

### B. Intimidation of a Witness

{¶ 25} McDonald-Glasco was also convicted of intimidation a witness. Pursuant to R.C. 2921.04(B)(2), "[n]o person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense of calumny against any

person, shall attempt to influence, intimidate, or hinder * * * a witness to a criminal or delinquent act by reason of the person being a witness to that act."

{¶ 26} The only argument McDonald-Glasco makes with respect to the sufficiency of the evidence of his intimidation of a witness conviction is that Flowers' testimony was not credible. However, "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Flowers, the victim's girlfriend, testified that the day after the shooting, McDonald-Glasco drove by her house, pointed a gun at her, and told her that if she kept talking, she would be next. We conclude this was sufficient evidence to convict McDonald-Glasco of the intimidation of a witness.

{¶ 27} Having determined there was sufficient evidence to support McDonald-Glasco's convictions of murder and intimidation of a witness, we overrule McDonald-Glasco's first assignment of error.

## IV. Second Assignment of Error – Jury Instructions

{¶ 28} In his second assignment of error, McDonald-Glasco argues the trial court erred in instructing the jury on the offense of complicity to murder as an aider and abettor. More specifically, McDonald-Glasco asserts the trial court erred in failing to include a more thorough definition of the act of complicity.

{¶ 29} Generally, the trial court has discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion. *State v. Lipkins*, 10th Dist. No. 16AP-616, 2017-Ohio-4085, ¶ 28. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 30} "The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." *State v. Joy*, 74 Ohio St.3d 178, 181 (1995), citing *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Conversely, "[i]t is well established that the trial court will not instruct the jury where there is no evidence to support an issue." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991), citing *Riley v. Cincinnati*, 46 Ohio St.2d 287 (1976). Thus, in

reviewing a record to determine whether there is sufficient evidence to support the giving of an instruction, "an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Murphy* at 591, citing *Feterle v. Huettner*, 28 Ohio St.2d 54 (1971).

{¶ 31} In instructing the jury on complicity, the trial court stated:

> Before you can find the Defendant guilty of a crime or specification as an aider and abettor, you must find beyond a reasonable doubt that on or about the 2nd day of October, 2016, in Franklin County, Ohio, the Defendant solicited or procured another to commit the offense or aided or abetted another in committing the offense with the same knowledge or purpose as required by the offense under consideration.
>
> Before you can find the Defendant guilty of complicity by aiding and abetting, you must find beyond a reasonable doubt that the Defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal offender in the commission of the offense and that the Defendant shared the criminal intent of the principal offender.
>
> Such intent may be inferred from the circumstances surrounding the events, including, but not limited to, presence, companionship, and conduct before and after the offense was committed.
>
> The mere presence of the Defendant at the scene of the offense is not sufficient to prove in and of itself that the Defendant was an aider or abettor.
>
> One does not aid or abet if he merely sees a crime being committed. One cannot be criminally liable as an accessory after the crime has been committed.
>
> Aid means to help, assist, or strengthen.
>
> Abet means to encourage, counsel, incite, or assist.
>
> A common purpose among two or more people to commit a crime need not be shown by positive evidence but may be inferred from circumstances surrounding the act and from Defendant's subsequent conduct.

> Criminal intent may be inferred form presence, companionship, and conduct before and after the offense is committed.
>
> In addition mere presence can be enough if it is intended to and does aid the primary offender.
>
> It is no defense to a charge of complicity that no person with whom the Defendant was complicit has been convicted as a principal offender.

(Tr. Vol. 4 at 846-48.)

{¶ 32} Though he agrees the trial court included much of the necessary language in a complicity instruction, McDonald-Glasco argues the trial court nonetheless erred in instructing the jury when it declined to also include (1) language requiring proof of a conspiracy to do the act; (2) an explanation that mere presence at the scene of the crime was not enough to convict McDonald-Glasco; and (3) language stating McDonald-Glasco's failure to object or his mere knowledge or approval of the crime was not enough to convict him of complicity.

{¶ 33} First, as to McDonald-Glasco's argument regarding proof of a conspiracy, we note it was not necessary for the state to prove conspiracy in order to convict a defendant of complicity under R.C. 2923.03(A)(1) or (2). Thus, the trial court did not abuse its discretion in declining to give an instruction on conspiracy mirroring R.C. 2923.03(A)(3) where it had already adequately instructed the jury on the alternative theories of complicity contained in R.C. 2923.03(A)(1) and (2).

{¶ 34} Second, the trial court did instruct the jury that a defendant's mere presence at the scene of a crime is not enough to convict a defendant of complicity. Thus, there is no merit to McDonald-Glasco's argument that the trial court abused its discretion in failing to instruct the jury on this point.

{¶ 35} Finally, McDonald-Glasco argues the trial court erred by not providing a more thorough explanation to the jury that McDonald-Glasco's failure to object or his mere knowledge or approval was not enough to convict him of complicity. However, in instructing the jury, the trial court gave a complete instruction of the offense of complicity, defined the pertinent terms, and instructed the jury on finding that McDonald-Glasco must

have possessed the requisite mens rea. *See State v. Brunner*, 10th Dist. No. 15AP-97, 2015-Ohio-4281, ¶ 34. Viewed in context of the overall charge to the jury, we find no abuse of discretion in the trial court's decision not to include the additional language requested by McDonald-Glasco. *See State v. Price*, 60 Ohio St.2d 136 (1979), paragraph four of the syllabus (stating "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge").

{¶ 36} Thus, because we conclude the trial court did not abuse its discretion in instructing the jury as to the requirements of McDonald-Glasco's complicity, we overrule McDonald-Glasco's second assignment of error.

## V. Third Assignment of Error – Manifest Weight of the Evidence

{¶ 37} In his third assignment of error, McDonald-Glasco argues the manifest weight of the evidence does not support his convictions.

{¶ 38} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 39} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the

manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 40} McDonald-Glasco argues his convictions are against the manifest weight of the evidence because the witnesses' testimony was not credible. However, McDonald-Glasco does not offer specific reasons the witnesses allegedly lacked credibility. To the extent McDonald-Glasco intended to argue Slaughter's testimony lacked credibility because of his admitted involvement in the scheme to lure Heron into the alley, we note that it is within the province of the jury to believe Slaughter's testimony in spite of his admitted involvement and plea agreement with the state. *State v. Connally*, 10th Dist. No. 16AP-53, 2016-Ohio-7573, ¶ 41, citing *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 18 (noting the jury is in the best position to assess the credibility of a codefendant). Additionally, our review of the transcript indicates Slaughter's testimony "was not so incredible as to render appellant's convictions against the manifest weight of the evidence." *Berry* at ¶ 18, citing *State v. Thompson*, 10th Dist. No. 07AP-491, 2008-Ohio-2017, ¶ 34.

{¶ 41} Additionally, the testimony of several witnesses placed McDonald-Glasco with the group that sought to lure Heron into the alley, and surveillance images placed McDonald-Glasco with this group both before and after the shooting. Also, McDonald-Glasco's assertion that his convictions are against the manifest weight of the evidence because of the state's reliance on circumstantial evidence is unpersuasive. As this court has noted, "[i]f [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other physical evidence does not render the conviction against the manifest weight of the evidence." *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21. Thus, considering all the evidence, we cannot say the jury lost its way in finding the witnesses' testimony to be credible and inferring that McDonald-Glasco shared the criminal intent of Crowley and Green when they lured Heron into the alley and shot him to death.

{¶ 42} Considering all of the evidence together, the jury did not clearly lose its way in concluding McDonald-Glasco participated as an aider and abettor in Heron's murder or that McDonald-Glasco threatened Flowers to keep quiet the day after the murder. After an independent review of the record, we find McDonald-Glasco's convictions are not against

the manifest weight of the evidence. Thus, we overrule McDonald-Glasco's third assignment of error.

## VI. Fourth Assignment of Error – Crim.R. 29 Motion for Acquittal

{¶ 43} In his fourth and final assignment of error, McDonald-Glasco argues the trial court erred in denying his Crim.R. 29 motion for acquittal.

{¶ 44} Crim.R. 29(A) provides that the court, "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Review of the denial of a Crim.R. 29 motion and the sufficiency of the evidence apply the same standard. *State v. Fugate*, 10th Dist. No. 12AP-194, 2013-Ohio-79, ¶ 5, citing *State v. Turner*, 10th Dist. No. 04AP-364, 2004-Ohio-6609, ¶ 8.

{¶ 45} As we stated above in our resolution of McDonald-Glasco's first assignment of error, there was sufficient evidence to support McDonald-Glasco's convictions for murder and intimidation of a witness. Thus, because McDonald-Glasco's Crim.R. 29 motion depends on the same standard as his sufficiency of the evidence argument, we similarly overrule McDonald-Glasco's fourth and final assignment of error.

## VII. Disposition

{¶ 46} Based on the foregoing reasons, the sufficiency and manifest weight of the evidence supports McDonald-Glasco's convictions, the trial court did not abuse its discretion in instructing the jury, and the trial court did not err in denying McDonald-Glasco's Crim.R. 29 motion for acquittal. Having overruled McDonald-Glasco's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and SADLER, J., concur.