[Cite as *State v. Hart*, 2018-Ohio-2907.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-659 |
| | | (C.P.C. No. 17CR-402) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jonathon B. Hart, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 24, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton,* for appellee.

**On brief:** *The Stavroff Law Firm*, and *Jeffrey T. Stavroff*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Jonathon B. Hart, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of aggravated burglary, two counts of robbery, one count of theft, one count of receiving stolen property, one count of tampering with evidence, and one count of kidnapping. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed January 20, 2017, plaintiff-appellee, State of Ohio, charged Hart with one count of aggravated burglary in violation of R.C. 2911.11, a first-degree felony; one count of robbery in violation of R.C. 2911.02, a second-degree felony; one count of robbery in violation of R.C. 2911.02, a third-degree felony; one count of theft

in violation of R.C. 2913.02, a fifth-degree felony; one count of receiving stolen property in violation of R.C. 2913.51, a fifth-degree felony; one count of tampering with evidence in violation of R.C. 2921.12, a third-degree felony; and one count of kidnapping in violation of R.C. 2905.01, a first-degree felony. The charges related to a home invasion that occurred in the Short North neighborhood of Columbus. The state had previously indicted Damien C. Summers as a codefendant. Hart entered a plea of not guilty.

{¶ 3} On the same day that the state filed the indictment against Hart, Summers entered into a plea agreement with the state wherein he agreed to enter a guilty plea to one count of aggravated burglary and one count of tampering with evidence in exchange for a nolle prosequi on the other charges. The trial court sentenced Summers to a four-year term of imprisonment and ordered Summers to testify truthfully against any indicted codefendant, journalizing his convictions and sentence in a January 25, 2017 judgment entry. *State v. Summers*, Franklin C.P. No. 16CR-2295 (Jan. 25, 2017).

{¶ 4} At Hart's jury trial commencing July 18, 2017, David Pando testified that he was alone in his apartment at 53½ Price Avenue during the early morning hours of March 27, 2016 when he heard knocking and hollering at his door. Pando initially ignored the knocking, assuming the noise was coming from patrons from nearby bars, and fell asleep. However, Pando said he woke abruptly to find two men whom he had never seen before standing in his living room. One of the men held Pando down and put a blanket on him, placing an object against Pando's body and threatening to hurt him if Pando resisted. The man restraining Pando yelled "I'm going to blow your brains out if you move." (July 18, 2017 Tr. Vol. I at 27.) While the one man restrained Pando, the other man proceeded to steal Pando's property, including two flat screen televisions, a computer monitor, a watch, a wallet with credit cards, and an iPhone.

{¶ 5} Pando testified the two men wore all-black clothing and said he never saw their faces. Pando said the man holding him down was shorter than the other man, wore leather gloves, and had a southern "twangy" accent. (Tr. Vol. I at 52.) Pando testified he had tried to bite the man's fingers but was unsuccessful because of the gloves.

{¶ 6} As the men were leaving the apartment, Pando said they grabbed a laptop computer, too. Pando testified he begged the men to leave the laptop and the men complied. The man who had restrained Pando told Pando to remain still. Pando said he

arose minutes later, still under the blanket and "shaking like crazy" because he was so terrified. (Tr. Vol. I at 31.) Because the men had taken his phone, Pando had no way to call police. Pando said he looked out his window and saw two men loading equipment into a minivan before driving away. Pando then drove to his girlfriend's house in German Village where he called 911.

{¶ 7} Kathy Zimmer, a detective with the Columbus Division of Police, testified that during the course of the investigation, Summers appeared on police's radar. Through conversations with Pando, detectives determined that Summers had recently been inside Pando's home as an assistant to a maintenance technician, Jim Abbott, who was doing repairs to Pando's apartment. The assistant had a southern "twang" similar to the person who burglarized and threatened Pando, and the repairs occurred a few days before the home invasion.

{¶ 8} Abbott testified that he formerly employed both Summers and Hart. Abbott confirmed that Summers had accompanied him to Pando's apartment a few days before the home invasion. Additionally, Abbott testified that Hart never accompanied him to Pando's apartment.

{¶ 9} On April 18, 2016, police arrested Summers, and Summers spoke to detectives without counsel present. Summers initially told police that Hart and a person named Aaron robbed Pando's apartment on March 27, 2016. Aaron is Hart's cousin. At that time, Summers said his only role was that of the middleman who "passed along the information, the address to Mr. Pando's and what would be in the house and stuff like that." (Tr. Vol. I at 145.) Summers told police he had known Hart for a few years because Summers had a relationship with Hart's mother. After this initial conversation with police, the state charged Summers with aggravated robbery.

{¶ 10} Subsequently, on September 29, 2016, Summers, this time with counsel present, engaged in a proffer with detectives and an assistant prosecuting attorney. During this proffer, Summers told detectives that he had an active role in the home invasion along with Hart, but he did not say anything about restraining Pando or threatening to kill him.

{¶ 11} Summers then spoke to law enforcement officers a third time on January 4, 2017. During this statement, Summers said he held Pando down during the home invasion.

Summers also insisted during this third statement that Hart aided him in the home invasion.

{¶ 12} Summers testified at trial pursuant to his plea agreement with the state, explaining the evolving nature of his three statements to law enforcement officers. During his testimony, Summers implicated Hart as his accomplice during the home invasion. Summers testified he struggled with drug addiction and plotted the home invasion because he needed money to support his drug habit.

{¶ 13} According to Summers' trial testimony, Summers said he discussed his plan for the home invasion with Hart and Hart's cousin, Aaron. The men planned for Aaron's unnamed friend to drive Summers and Hart to Pando's apartment and Aaron would help the men sell the stolen property. Summers said they arrived at Pando's apartment in a minivan. Once at the apartment, Summers testified he entered the apartment through an unlocked back window and then let Hart in through the kitchen door.

{¶ 14} Among the property stolen from Pando's apartment was Pando's wallet containing numerous credit cards. Summers testified he used one of Pando's credit cars at a Marathon gas station on East Hudson Avenue. Summers said he then gave the credit card to Hart to buy cigarettes from McGuffey's Market on East Hudson Avenue. Summers told law enforcement officers he threw the credit cards in a sewer after using them. Pando cancelled his credit cards after noticing suspicious transactions from a Marathon gas station and McGuffey's Market after the robbery.

{¶ 15} Detective Zimmer testified that she followed up on Pando's report of suspicious credit card transactions. While there was no surveillance video available from the Marathon gas station, Detective Zimmer testified she was able to recover video from McGuffey's Market. Detective Zimmer testified she first thought the surveillance video showed Summers using the credit card at McGuffey's Market but later learned the footage was Hart using the credit card. Additionally, Detective Zimmer testified that law enforcement personnel were able to recover Pando's credit cards from the sewer. Detective Zimmer said she did not seek fingerprints or DNA from Pando's residence.

{¶ 16} Following deliberations, the jury returned guilty verdicts on all seven counts contained in the indictment. Following an August 25, 2017 sentencing hearing, the trial court sentenced Hart to an aggregate prison term of four years and ordered him to pay

$2,700 in restitution. The trial court journalized Hart's convictions and sentence in an August 25, 2017 judgment entry. Hart timely appeals.

## II. Assignment of Error

{¶ 17} Hart assigns the following error for our review:

> The jury's verdicts finding Appellant guilty of all seven counts of the indictment were against the manifest weight of the evidence.

## III. Analysis

{¶ 18} In his sole assignment of error, Hart argues his convictions were against the manifest weight of the evidence.

{¶ 19} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 20} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence

weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 21} Hart argues his convictions are against the manifest weight of the evidence because Summers' testimony was not credible. More specifically, Hart argues Summers' testimony was not credible because Summers testified as part of a plea agreement for his involvement in the same home invasion. However, it is within the province of the jury to believe Summers' testimony in spite of his admitted involvement in the home invasion and plea agreement with the state. *State v. Connally*, 10th Dist. No. 16AP-53, 2016-Ohio-7573, ¶ 41 (noting the fact that a witness is a codefendant or is testifying pursuant to a plea agreement does not automatically render the witness' testimony lacking in credibility; rather, it is for the jury to assess the credibility of the testifying codefendant), citing *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 18 (noting the jury is in the best position to assess the credibility of a codefendant). *See also State v. McDonald-Glasco*, 10th Dist. No. 17AP-368, 2018-Ohio-1918, ¶ 40.

{¶ 22} Hart additionally argues Summers' testimony lacks credibility because Summers demonstrated a pattern of lying to investigators. However, as we noted above, it is within the province of the jury to consider the inconsistencies in Summers' previous statements to police with the testimony he provided at trial and resolve them accordingly. *Raver* at ¶ 21.

{¶ 23} Finally, to the extent Hart argues Summers' testimony lacks credibility because he was the only witness to place Hart at the scene of the home invasion and there was no physical evidence connecting Hart to the home invasion, this court has noted that " '[a] lack of physical evidence, standing alone, does not render [a defendant's] conviction against the manifest weight of the evidence.' " *Connally* at ¶ 43, quoting *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21, citing *State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12. " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other physical evidence does not render the conviction against the manifest weight of the evidence.' " (Internal quotations omitted.) *Connally* at ¶ 43, quoting *Peeples* at ¶ 21. Further, " '[t]he testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction.' " *State v. Barrie*, 10th Dist.

No. 15AP-848, 2016-Ohio-5640, ¶ 21, quoting *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18.

{¶ 24} Summers testified regarding his own involvement in the home invasion and identified Hart as his accomplice, giving great detail about the plan leading up to the home invasion, the home invasion itself, and the conduct of Summers and Hart after leaving Pando's apartment. Having reviewed the entire record, Summers' testimony " 'was not so incredible as to render appellant's convictions against the manifest weight of the evidence.' " *Connally* at ¶ 41, quoting *Berry* at ¶ 18. We also note that the jury was made aware of Summers' plea agreement with the state, Summers was subject to cross-examination, and the trial court specifically instructed the jury concerning the testimony of an accomplice. *State v. Person*, 10th Dist. No. 16AP-12, 2017-Ohio-2738, ¶ 51-53 (convictions not against the manifest weight of the evidence where jury is aware of codefendant's plea agreement, codefendant is subject to cross-examination, and trial court instructs the jury on testimony of a codefendant).

{¶ 25} Considering all the evidence together, the jury did not clearly lose its way in concluding Hart participated in the home invasion with Summers. After an independent review of the record, we find Hart's convictions are not against the manifest weight of the evidence. Thus, we overrule Hart's sole assignment of error.

**IV. Disposition**

{¶ 26} Based on the foregoing reasons, Hart's convictions are not against the manifest weight of the evidence. Having overruled Hart's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

———————————————