[Cite as *State v. Daniels*, 2019-Ohio-1791.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-626 |
| v. | : | (C.P.C. No. 17CR-4013) |
| Nicolas A. Daniels, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 9, 2019

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Valerie Swanson,* for appellee.

**On brief:** *Anzelmo Law* and *James Anzelmo,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} A jury convicted Nicolas Daniels of aggravated possession of drugs, a fifth-degree felony. Finding no reversible error, we affirm.

{¶ 2} The jury heard evidence that:

When police encountered Mr. Daniels, he was sitting behind the wheel of a parked light truck with his girlfriend in the passenger seat (Sept. 25, 2018 Tr. Vol. II at 134-36);

The two had been parked there for "maybe half an hour," by Mr. Daniels's estimate (State's Ex. B at 13:46 of video segment);

A charred soda can with its top removed and showing other indications that it is the sort of device used to liquefy narcotics was resting on the floor by the center console of the car

(Sept. 28, 2018 Tr. Vol. II at 137-43; State's Ex. B at 14:40-14:48);

Two syringes "loaded with a hazy substance" were on the floor of the driver's side, one uncapped and sticking into the carpet within a two-inch area defined by the end of the driver's seat and the center console, the other capped and roughly six inches away nearer the front of the vehicle (Tr. Vol. II at 137-43, 140);

One of those syringes contained .474 grams of Fentanyl, a Schedule II controlled substance (*Id.* at 179);

Mr. Daniels said that he would expect his DNA to be on those syringes, because he and his girlfriend shared the same needles (*Id.* at 174; State's Ex. B at 23:40-23:48);

An empty syringe was recovered from the passenger, whose pupils were very small in a way consistent with recent opiate use (Tr. Vol. II at 173); and

Mr. Daniels told the lead officer that the car was his father's, that Mr. Daniels was driving himself and his girlfriend that night, that they both had taken drugs earlier in the day, that he believed the two syringes to contain heroin, and that the full syringes had been "sitting in the middle" of the front seat area before his girlfriend (whose needles he said they were) "threw [them] to my side" after the police arrived. (*See* State's Ex. B at 1:28, 15:18-15:29, 22:40-24:20.) The officer testified that he was trained to look for but did not observe movements within the car suggesting that the passenger displaced objects as the officer approached. (Tr. Vol. II at 149-50.)

{¶ 3} In his first assignment of error, Mr. Daniels challenges his conviction because the trial court instructed the jury on complicity. The defendant could be convicted, the judge told the jury, either as a principal offender or as someone who "aided or abetted another in committing" the drug possession offense with the same requisite criminal knowledge or purpose as the principal: "An aider or abettor is one who aids, assists, encourages, cooperates with, advises, or incites another to commit a crime, and participates in the commission of the offense by some act, word or gesture." (Tr. Vol. II at 229.)

{¶ 4} A jury instruction must "present a correct, pertinent statement of the law that is appropriate to the facts" of the case. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46. Whether a particular jury instruction is warranted by the evidence is a question of law. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 22. "[I]n reviewing a record to determine whether there is sufficient evidence to support the giving of an instruction, 'an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.' " *State v. McDonald-Glasco*, 10th Dist. No. 17AP-368, 2018-Ohio-1918, ¶ 30, quoting *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991); *see also, e.g., State v. Rac*, 2d Dist. No. 27536, 2019-Ohio-893, ¶ 15.

{¶ 5} Instruction on complicity was appropriate here. Although Mr. Daniels argues that "the record does not connect [him] to the drug offense in any way" (Appellant's Brief at 7), reasonable minds could conclude, among other things, that: he provided the truck in which the drugs were located; having done "a little bit" of drugs earlier with his companion, he knew full well that Schedule II drugs and paraphernalia for their preparation were present for use in the car and within his ambit ("[i]t was all sitting in the middle"); he had handled the syringe that contained the Fentanyl, a syringe that was found by his feet; and he had parked the truck on the street for some time to pursue or accommodate drug activity. Those permissible conclusions, in the context of the other evidence presented, could allow a reasonable fact finder to determine that even if Mr. Daniels was not himself the principal offender in possessing the Fentanyl, he was complicit in aiding and abetting his companion's possession.

{¶ 6} This is not "mere association with the principal offender or presence at the scene of the crime alone," as Mr. Daniels would have it. (*Compare* Appellant's Brief at 6.) This is not the *State v. Sims* story of a backseat passenger in a stolen car who lacked any established " 'previous connection' " to the criminal transaction. *See* 10 Ohio App.3d 56, 59 (8th Dist.1983), quoting *Smith v. State*, 41 Ohio App. 64, 68 (9th Dist.1931). And this is not the tale of *State v. Hall*, 8th Dist. No. 102789, 2016-Ohio-698, ¶ 13, involving a visitor who had no demonstrated "criminal association" with the residents of the house in which cocaine and heroin were secreted. Rather, in sharp contrast, Mr. Daniels could be found by his own account to have had a history of illicit drug use with his companion that

extended in his telling to sharing the needle that contained the Fentanyl here and to driving the two of them around in the vehicle that was under his control while being used for drug-related purposes with the drug in open and close proximity to him.

{¶ 7}   The complicity instruction was fully warranted.  "Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed," although the state must show that the defendant had a role in causing the offense.  *State v. Hurse*, 10th Dist. No. 14AP-687, 2015-Ohio-2656, ¶ 18, citing *State v. Johnson,* 93 Ohio St.3d 240, 245 (2001), and *State v. Buelow*, 10th Dist. No. 07AP-317, 2007-Ohio-5929.  And although the defense protests that a complicity instruction "was irrelevant" because "the prosecution contends that Daniels was a principal offender in the drug possession offense" (*see* Appellant's Reply Brief at 3), "a defendant charged with an offense may be convicted of that offense upon proof he was complicit in its commission even if the indictment against the defendant is stated in terms of the principal offense."  *State v. Guy*, 10th Dist. No. 17AP-322, 2018-Ohio-4836, ¶ 44 (citation omitted).

{¶ 8}   Daniels's second and third assignments of error contend that his conviction was based on insufficient evidence and against the manifest weight of the evidence.

{¶ 9}   In reviewing whether there is legally sufficient evidence to sustain a verdict, "[t]he relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt." *McDonald-Glasco*, 2018-Ohio-1918 at ¶ 20 (citations omitted).  Here, it would.

{¶ 10} Assessing a manifest weight challenge, this court "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22 (citation omitted).  An appellate court should reverse a conviction as against the manifest weight of the evidence "for only the most 'exceptional case in which the evidence weighs heavily against the conviction.' "  *State v. Reed*, 10th Dist. No. 09AP-84, 2009-Ohio-6900,

¶ 24, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Here, the jury does not appear to have so clearly lost its way.

{¶ 11} As we already have suggested, reasonable minds could find complicity on the evidence presented (and they could find Mr. Daniels guilty as a principal offender as well). The essence of Mr. Daniels's arguments about the sufficiency and weight of the evidence is that the conviction should be overturned because he wasn't actually touching the drugs lying at his feet when police arrived, and he told the officer that the Fentanyl-laden syringe that he presumed had his DNA on it was his girlfriend's, not his. *See* Appellant's Brief at 11 ("Daniels indicated that the drugs belonged" to his companion), 13-14 ("Daniels denied ownership of the drugs," and claim that they were his companion's "is credible"). Under these circumstances, that doesn't do the trick.

{¶ 12} We need not rehearse the evidence again, but it bears repeating that this is not a case in which nothing connects the drugs at issue to this defendant. Mr. Daniels's reliance on *State v. Chandler*, 10th Dist. No. 94APA02-172, 1994 Ohio App. Lexis 3535, therefore is misplaced. There, where "no evidence was presented to establish that defendant was anything more than an observer of the activity" by standing outside in a group that was peering at crack cocaine on a trashcan lid, *id.* at *10, the court noted that "mere access to drugs through occupation or ownership of the premises upon which the drugs are found is insufficient to establish possession," *id.* at *9, quoting R.C. 2925.01(K) (also reasoning at *8 from *State v. Haynes*, 25 Ohio St.2d 264 (1971), where the absent owner of a house regularly occupied by co-tenants was not tied to drugs found in a common area). Here, the jury was entitled to conclude that Mr. Daniels had a rather more direct tie to the Fentanyl. (The court is constrained to note that while there are still more important reasons not to share needles, that averred practice was not helpful to Mr. Daniels even on the legal questions this appeal presents.)

{¶ 13} In his fourth and final assignment of error, Mr. Daniels says that the trial court abused its discretion by denying his day-of-trial motion to dismiss his counsel even as potential jurors waited. (Appellant's Brief at 15, citing Sept. 25, 2018 Tr. Vol. I at 18-19.) Yet Mr. Daniels points to nothing specific in the record reciting particular objections to his trial counsel's performance or reflecting "specific facts indicating a specific breakdown in the attorney-client relationship" that would have been "sufficient to trigger

the court's duty to inquire" further into the subject. *See State v. Harris*, 10th Dist. No. 09AP-1111, 2010-Ohio-4127, ¶ 44.

{¶ 14} Moreover and significantly, as this court has observed: "It has been held that '[a] motion for new counsel made on the day of trial intimates such motion is made in bad faith for the purposes of delay." *State v. Griffin*, 10th Dist. No. 12AP-798, 2013-Ohio-5389, ¶ 10 (citations omitted). Here, as in *Griffin*, "appellant's complaint regarding his counsel was not made until the first day of trial, and therefore would have necessitated a continuance of trial [here, as already set for the fourth time] * * * Under Ohio law, 'the [constitutionally enshrined] right to counsel must be [considered in the context of] * * * the court's authority to control its docket, as well as its awareness that a demand for counsel may be utilized as a way to delay the proceedings. ' " *Id.* at ¶ 15 (citations omitted).

{¶ 15} Here, as in *Griffin* too, "[t]he record on appeal * * * does not reflect that trial counsel was unprepared to proceed with trial, nor does it suggest such a breakdown in the attorney-client relationship that appellant failed to receive adequate representation." *Id.* at ¶ 14. In sum, "the trial court did not abuse its discretion in refusing to delay appellant's trial based upon his untimely, generalized complaints regarding counsel." *Id.* at ¶ 15; *see also, e.g., State v. Satterwhite*, 2d Dist. No. 23142, 2009-Ohio-6593, ¶ 42 ("a motion to substitute counsel, made on the day of a trial that has been set for some time, requires a strong showing of good cause to overcome the implication of bad faith resulting from the timing of the motion").

{¶ 16} Our review of the exchange between the trial court and Mr. Daniels and his counsel reveals that the judge listened to generic concerns about the nature of the charge and of perceived chumminess between defense counsel and the assistant prosecutor, noted the civil and collegial nature of the criminal bar in Columbus, and moved ahead with the trial as (re)(re)(re)scheduled for that day. On this record, we find no grounds for setting aside the jury verdict.

{¶ 17} We overrule each of Mr. Daniels's assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and DORRIAN, J., concur.

_____