[Cite as *State v. Rencher*, 2019-Ohio-2138.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 18AP-562 |
| v. | : | (C.P.C. No. 15CR-5824) |
| Amber N. Rencher, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 30, 2019

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Seth L. Gilbert,* for appellee.

**On brief:** *Eric W. Brehm,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Gregory "G-man" Smith died from a gunshot wound on Amber Rencher's porch. In due course, a jury convicted Ms. Rencher of the third-degree felony of tampering with evidence in the form of a handgun said to have been concealed or removed from the scene. She now appeals from that conviction, which in her single assignment of error she maintains was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 2} The jury heard testimony from Ms. Rencher's own mouth in which she averred among other things that:

> She understood soon after her 911 call notifying police of the shooting that they were conducting what became a murder investigation. *See, e.g.,* Feb. 28, 2018 Tr. at 111 (officer "was like, well, we're now making your apartment an

investigation"), 119 ("I know it was crime scene tape around my house").

She took drugs away from the scene, in the form of a bag of marijuana that the dying man (with whom she said she was "pursuing * * * maybe starting a relationship," Tr. at 108) told her to "give * * * to one of the brothers," Tr. at 116; "when I seen his brother a couple days later I gave it to him because that's what he had instructed me to do," Tr. at 135.

She texted someone on November 16, 2015, the day of the shooting: "They in my house.  The gun in there."  Tr. at 143.  She texted a bit later:  "Aaron told them he was in my house.  What should I say, dude, if they find it?"  Tr. at 143-44.

She told police in an interview some days after the shooting that she had retrieved a gun from the scene, hidden it, and later taken it to a person named Steel Toe.  Tr. at 137 ("Yes, sir.  That's what I said"), 139.

Texted by someone on the day after the shooting, "You got G-man's stuff?," she responded:  "Nope.  They took it when they searched my house.  Steel Toe got that thing, though?"  Tr. at 144.

{¶ 3}   She also acknowledged that it was her voice the jury heard on the 911 tape reporting the shooting.  Tr. at 131.  Reasonable jurors listening to that call could find that right after being asked, "[a]re the weapons there," and responding "[n]o, sir," she can be heard exclaiming, "[t]hey're coming" repeatedly, before instructing:  "Move the gun. Move the gun." State's Ex. A at 0:27-0:42.

{¶ 4}   Police did not recover a gun from the scene.  Tr. at 68-69 (testimony of Det. Dickey).

{¶ 5}   Ms. Rencher provided the jury with accounts different from what she had told police about first having hidden the gun and then taken it to Steel Toe.  She feared retaliation from people she was told were hanging out in or around her apartment, she said, so she "made up this big story" about a gun that she thought detectives would come to understand was "not even plausible."  Tr. at 128, 124-26; *see also id.* at 139 (Q,: "you're making up the fact that you took that gun to someone [sic] else and gave it to Steel Toe?" A. "Yes, sir.").  And she said that as she had told police at a different point, she had seen a gun at the scene with the victim and his companion Little Man/Wooskie, but "then when I

was in the midst of helping G-man, Wooskie or Little Man disappeared and I didn't see the gun any more." *Id.* at 140. Her account to police about having removed a gun herself, she said, was not accurate: "I did lie to the police officer." *Id.* at 146.

{¶ 6} The jury, of course, was not bound to believe Ms. Rencher's testimony that she was lying about having hidden and removed the gun. *See, e.g., State v. Betters*, 10th Dist. No. 17AP-901, 2018-Ohio-4079, ¶ 13 ("the jury may take note of the inconsistencies and resolve them accordingly, 'believ[ing] all, part, or none of a witness's testimony' ") (citations omitted).

{¶ 7} No person who, "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted," shall "conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). The jury convicted Ms. Rencher of that form of tampering with evidence. *See* Jury Instructions at 5-6; unanimous jury verdict form of March 1, 2018.

{¶ 8} In reviewing whether there is legally sufficient evidence to sustain a verdict, " '[t]he relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Daniels*, 10th Dist. No. 18AP-626, 2019-Ohio-1791, ¶ 9, quoting *State v. McDonald-Glasco*, 10th Dist. No. 17AP-368, 2018-Ohio-1918, ¶ 20 (citations omitted).

{¶ 9} In assessing a manifest weight challenge, this court " 'may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Daniels* at ¶ 10, quoting *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22 (citation omitted). An appellate court should reverse a conviction as against the manifest weight of the evidence " 'for only the most "exceptional case in which the evidence weighs heavily against the conviction." ' " *Daniels* at ¶ 10, quoting *State v. Reed*, 10th Dist. No. 09AP-84, 2009-Ohio-6900, ¶ 24, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 10} Here, when the evidence is reviewed in the light most favorable to the prosecution, a rational juror indeed could have found, as this jury did, that the state proved every element of the tampering charge beyond a reasonable doubt. And this is not the exceptional case where the jury clearly lost its way so as to create a manifest miscarriage of justice.

{¶ 11} Reviewing Ms. Rencher's own testimony in the context presented here, a juror would have been entirely rational to conclude beyond a reasonable doubt (1) that Ms. Rencher knew during or shortly after the time of her 911 call reporting a shooting that the matter would be or was being investigated and that she was in the midst of a "crime scene," *see* Tr. at 111, 119, and (2) that she concealed or removed or was complicit in concealing or removing a handgun from the vicinity of the murder victim, *see, e.g.,* Tr. at 137 (admission to police about having conveyed the gun to Steel Toe); *id.* at 143-44 (texts, one explicitly referencing a "gun"); State's Ex. A ("Move the gun").

{¶ 12} Ms. Rencher argues through counsel that the state failed to prove (3) that she acted with the requisite purpose to impair the value or availability of the gun as evidence in the investigation, *see* Appellant's Brief at 9, but taking and hiding a gun found at the scene of a shooting death could easily be found as meant to obscure circumstances surrounding the event. Here, a jury evaluating the evidence reasonably could find that Ms. Rencher repeatedly expressed concern over the possibility that investigating officers might find the gun, reflecting at least an implied desire that they not. *See, e.g.,* State's Ex. A ("They're coming * * * Move the gun * * *"); Tr. at 143-144 "What should I say, dude, if they find it?"; "Steel Toe got that thing, though?").

{¶ 13} "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence." *State v. Fincher*, 10th Dist. No. 86AP-82, 1986 Ohio App. Lexis 9009 at * 8 (further noting that circumstantial evidence used "to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt"); *see also, e.g., State v. Dowen*, 8th Dist. No. 101020, 2015-Ohio-302, ¶ 24 (in "determining whether the defendant [in a tampering case] acted purposely, a defendant's state of mind may be inferred from the surrounding circumstances"). Ms. Rencher's admission that she "hid" the gun and "later took it to

Steel Toe" reasonably could be understood in these circumstances as evidencing a specific intent to make the gun unavailable to police as evidence in the investigation. The jury was entitled to find the requisite purpose beyond a reasonable doubt, even without considering evidence of a further design by Ms. Rencher to conceal other (marijuana) evidence from the scene. *See, e.g., State v. Workman*, 3d Dist. No. 2-15-05, 2015-Ohio-5049, ¶ 59 ("the trier of fact could reasonably infer that by placing an item in a trash bin, Workman specifically intended to impair its availability as potential evidence in an investigation").

{¶ 14} Contrary to Ms. Rencher's suggestion, *see* Appellant's Brief at 5, 9, it matters not for this offense whether Ms. Rencher was a suspect in the shooting itself. What matters is whether she purposefully "impair[ed] * * * [the] value or availability [of the gun] as evidence in [the] * * * investigation." R.C. 2921.12(A)(1). The state need not prove a particular motive for impairing the availability of the gun evidence. *See, e.g., State v. Johnson*, 7th Dist. No. 04-MA-193, 2007-Ohio-3332 (" 'Motive, in criminal law, is not an element of the crime,' " quoting *State v. Wyant*, 64 Ohio St.3d 566, 571, 572, fn. 8 (1992), vacated on other grounds by *Ohio v. Wyant*, 508 U.S. 969 (1993), which had further recited that "the actor's state of mind or volition at the time he acts * * * * is not the same as * * * motive * * * * 'Motive is what prompts a person to act * * * * [as opposed to] the state of mind with which the act is done,' " quoting *Black's Law Dictionary*, 810 (6 Ed.1990)); *State v. Miller*, 7th Dist. No. 13-MA-12, 2014-Ohio-2936, ¶ 110 (proof of motive not required to establish the crime of tampering with evidence; "his reason for having purpose to impair the value or availability of thing as evidence in an investigation was not an element").

{¶ 15} And it hardly helps Ms. Rencher's position for her to argue that there "was no evidence that the firearm removed from the victim's body was the weapon used in the shooting." *See* Appellant's Brief at 9. Well, yes, as the state naturally points out, the gun couldn't provide evidence as to whether or not it had been used in the shooting, precisely *because it was missing. See* Appellee's Brief at 11. And a reasonable juror also could find value to the investigation in determining whether the gun had been on the person of the victim, or others, even if it had not been used to shoot the victim. Again, however, police cannot analyze a gun for such indicia when the gun is gone.

{¶ 16} We overrule Ms. Rencher's sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER and BEATTY BLUNT, JJ., concur.

————————————