**The STATE of Ohio, Appellee,**

v.

**FRITZ, Appellant.**

[Cite as *State v. Fritz,* 163 Ohio App.3d 276, 2005-Ohio-4736.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20796.

Decided Sept. 9, 2005.

</div>

Johnna M. Shia, Assistant Prosecuting Attorney, for appellee.

Charles Bursey II, for appellant.

WOLFF, Judge.

{¶ 1} Dexter Lawrence Fritz was convicted by a jury in the Montgomery County Court of Common Pleas of one count of assault on a police officer, a felony of the fourth degree. He was sentenced to one year of incarceration. Fritz appeals from his conviction and sentence.

{¶ 2} According to the state's evidence, on October 23, 2003, Detective Keith Coberly, Officer Eric Henderson, and Detective William Knight were performing their duties as members of the Dayton Vice Crimes Unit, which investigates prostitution, illegal liquor, and illegal gambling. The three were in plain clothes and driving unmarked vehicles; Coberly was alone in one car while Henderson and Knight drove together in another. At approximately 6:00 p.m., Coberly was advised over the radio that Donald Twaits, a male prostitute and a crack addict, was walking west in the Oregon District toward Fifth and Main Streets. Coberly

followed Twaits in his vehicle and saw him approach Fritz. Coberly then observed Twaits and Fritz sit together, Twaits hand Fritz paper money, and Fritz pull something out of his pocket for Twaits to see. Coberly believed that he was witnessing a drug transaction. Twaits and Fritz then separated—Twaits headed eastbound on Fifth Street while Fritz headed southbound. Coberly told Henderson and Knight what he had seen, and the officers decided that they would approach Fritz.

{¶ 3} Coberly parked on Main Street and began walking southbound on Main Street behind Fritz. Coberly was wearing his police badge from a chain around his neck; the badge was hanging on the outside of his clothing. Henderson and Knight circled the block and also parked their van. Henderson got out and approached Fritz from the south, walking north toward Fritz. Henderson was also wearing his police badge visibly on a chain around his neck, and he was carrying his police radio.

{¶ 4} As Henderson approached Fritz, Henderson held his badge up from his chest and called out "Dayton Police. We need to talk to you." Fritz immediately turned around, put something into his mouth, and started to run toward Coberly. Henderson believed that Fritz may have placed drugs in his mouth. Henderson grabbed Fritz from the rear and tried to pull his right arm away from his mouth; Coberly grabbed Fritz from the front. The three men fell to the ground. Fritz lay on his stomach with his hands and arms pulled in front of his body, and he appeared to be chewing something. The officers tried to pull Fritz's wrists out from underneath him in order to arrest him, and they repeatedly yelled for him to "spit it out," to put his hands behind his back, and to stop resisting. Fritz "flail[ed] around trying to erect himself." Knight had arrived and tried to hold Fritz down. Henderson used his radio to call for assistance. Coberly punched Fritz between 20 and 30 times in the body in an attempt to subdue him. Henderson punched Fritz approximately five times. Knight punched him one time in the face. When Knight grabbed Fritz around his neck or jaw, Fritz dug his fingernails into the back of Knight's hand. After uniformed officers arrived, Officer Mark Ponichtera ordered Fritz to put his hands behind his back. When Fritz did not comply, Ponichtera used pepper spray to subdue him. Fritz, at that point, swung his left elbow back, striking Ponichtera in the chin and chest. Ponichtera punched him in the face. Fritz subsequently became compliant and was handcuffed. Fritz, Henderson, Knight, and several other officers went to Miami Valley Hospital. Knight's right hand was bleeding from three gouges in the skin caused by Fritz.

{¶ 5} In his case-in-chief, Fritz offered a dramatically different version of events. According to his testimony, Fritz was downtown on October 23, 2003, to attend classes at Sinclair Community College, where he was a full-time student.

At 3:30 p.m., Fritz left Sinclair, purchased lunch at Arby's, and went to Courthouse Square at Main and Third Streets to eat it. At approximately 5:30 p.m., Fritz used the restroom at the bus hub located on the southeast corner of Main and Third Streets and then proceeded to walk south on Main Street to head back to Sinclair for a 6:30 p.m. class. As Fritz crossed the street at Main and Fifth Streets, he noticed a bluish-gray van driving slowly in the curb lane. As it got closer, a man jumped out of the van and ran directly toward Fritz. Fritz turned around to get out of the way. As he did so, another man grabbed Fritz's right arm. The first man caught up with the two and tackled Fritz, causing the group to fall. The two men piled on top of Fritz, and a third man grabbed his face, causing Fritz to have difficulty breathing. The first two men grabbed Fritz's arms and punched him all over his body. Fritz tried to get away from the men, and he attempted to move the hand from his face so that he could breathe. Fritz testified that he did not know the men, that he was scared, and that he believed he was being attacked. Fritz stated that the men did not identify themselves as police officers. A fourth man arrived and sprayed mace into his eyes. Fritz began yelling "Agh, agh, my eyes, my eyes" and he felt punches. Soon thereafter, he heard police sirens and was handcuffed. Fritz denied that he punched or kicked anyone and stated that he did not try to cause injury to anyone. Fritz subsequently filed a complaint with the Internal Affairs Division of the Dayton Police Department.

{¶ 6} On October 24, 2003, Fritz was charged by complaint with one count of assaulting a police officer, in violation of R.C. 2903.13(A) and 2903.13(C)(3), based on his actions toward Detective Knight. On November 6, 2003, Fritz was indicted on two counts of assaulting a police officer, based on his conduct toward Detective Knight and Officer Ponichtera. After a jury trial, Fritz was convicted of assaulting Knight and was acquitted of assaulting Ponichtera.

{¶ 7} Fritz raises three assignments of error on appeal.

{¶ 8} I. "Appellant's conviction was against the sufficiency and/or manifest weight of the evidence."

{¶ 9} In his first assignment of error, Fritz claims that his conviction was against the manifest weight of the evidence and was based on insufficient evidence.

{¶ 10} " '[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed.1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in

a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis* (1997), 79 Ohio St.3d 421, 430, 683 N.E.2d 1096, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.

{¶ 11} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 12} R.C. 2903.13(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." When the victim is a peace officer in the performance of his official duties, assault is a felony of the fourth degree. R.C. 2903.13(C)(3). Fritz maintains that he was not aware that the individuals who accosted him were police officers and that he did not knowingly attempt to inflict harm on Knight. Rather, he asserts that he merely tried to remove Knight's hands from his mouth so that he could breathe.

{¶ 13} Upon review of the record, we have no difficulty finding that the state presented sufficient evidence that Fritz assaulted Detective Knight in violation of R.C. 2903.13(A) and 2903.13(C)(3). Coberly and Henderson both testified that they were displaying their police badges when they approached Fritz. Henderson testified that he had held his badge out from his chest and told Fritz, "Dayton Police. We need to talk to you." Donald Christon, a bus driver for the Regional Transit Authority, testified that he was parked along the southbound lanes of Main Street—approximately 16 feet away from the ruckus—during the encounter. Christon supported the officer's testimony, stating that "two of the individuals for sure w[ere] police officers because they had their shields on a neck

string around their neck[s]." Christon further testified that, when the officers approached, "there was a few words" following which "one [officer] went for his [Fritz's] hand * * * and then a scuffle started." Although Fritz testified that he touched Knight's hand only to remove it from his mouth and nose so that he could breathe, Knight testified that he was attempting to pull Fritz's hands out from under him in order to arrest him when Fritz "dug three holes" into his hand, causing Knight's hand to bleed. Knight indicated that he has scars on his hand as a result of the injury. Such testimony is sufficient to sustain a conviction for assault of a peace officer.

{¶ 14} Moreover, we do not conclude that the jury clearly lost its way in reaching its verdict. Although Fritz testified that he had merely tried to move Knight's hand from his face and that he did not try to cause injury to anyone, the jury was not required to credit his testimony, nor was it required to discredit the testimony of Knight, Coberly, Ponichtera, and Christon. We afford great deference to the factfinder's credibility determinations. See *State v. Reed*, 155 Ohio App.3d 435, 2003-Ohio-6536, 801 N.E.2d 862; *State v. Sherrill* (Jan. 28, 2000), Montgomery App. No. 17359, 2000 WL 84642.

{¶ 15} The first assignment of error is overruled.

{¶ 16} II. "Appellant was denied his constitutional right to effective assistance of counsel."

{¶ 17} In his second assignment of error, Fritz claims that he was denied the effective assistance of counsel. Specifically, Fritz contends that his counsel (who has acted as both trial counsel and appellate counsel) should have requested a jury instruction on self-defense. Fritz notes that his counsel had requested an instruction on resisting arrest. Although Fritz was not charged with resisting arrest and his counsel has acknowledged that resisting arrest is not a lesser-included offense of assault on a police officer, Fritz asserts that an instruction on resisting arrest was warranted "as it was germane to the issue of his knowing infliction of bodily harm on Officer Knight."

{¶ 18} In order to demonstrate ineffective assistance of counsel, Fritz must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective

assistance of counsel. See id.; *State v. Parker,* Montgomery App. No. 19486, 2003-Ohio-4326, 2003 WL 21949748, ¶ 13.

{¶ 19} "A court's jury instructions must be based on the actual issues in the case as presented by the evidence. *State v. Guster* (1981), 66 Ohio St.2d 266 [20 O.O.3d 249, 421 N.E.2d 157]; *State v. Pecora* (1993), 87 Ohio App.3d 687 [622 N.E.2d 1142]. Thus, a court should not give an instruction unless it is specifically applicable to the facts in the case. Id. To determine whether an instruction on self-defense is warranted, the trial court must determine 'whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.' *State v. Melchior* (1978), 56 Ohio St.2d 15 [10 O.O.3d 8, 381 N.E.2d 195], paragraph one of syllabus; *State v. Robbins* (1979), 58 Ohio St.2d 74 [12 O.O.3d 84, 388 N.E.2d 755]." *State v. Scimemi* (June 2, 1995) Clark App. No. 94–CA–58, 1995 WL 329031.

{¶ 20} Under Ohio law, self-defense is an affirmative defense for which the defendant bears the burden of proof. In order for a defendant to establish self-defense involving the use of nondeadly force, he must prove by a preponderance of the evidence (1) that the defendant was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm.[1] See 4 Ohio Jury Instructions, Section 411.33; *State v. Hansen,* Athens App. No. 01CA15, 2002-Ohio-6135, 2002 WL 31518181, ¶ 24. There is no duty to retreat when nondeadly force is employed. *State v. Marbury,* Montgomery App. No. 19226, 2004-Ohio-1817, 2004 WL 758404, ¶ 22.

{¶ 21} When the situation involves the use of force against law enforcement officers, a private citizen may not—in the absence of excessive or unnecessary force by an arresting officer—use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances. *Scimemi,* supra, citing *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735, paragraph three of syllabus; *State v. Wenger* (1979), 58 Ohio St.2d 336, 12 O.O.3d 309, 390 N.E.2d 801.

---

1. In his appellate brief, Fritz sets forth the standard for self-defense involving the use of deadly force. In this case, Fritz gouged Knight's hand with his fingernails. This behavior clearly falls within the realm of nondeadly force.

{¶ 22} In the present case, Fritz testified that a man jumped out of the van and ran directly toward Fritz. When he turned to get out of the way, another man grabbed his arm and tackled him to the ground. Fritz indicated that he did not know the men, that he was not aware that they were police officers, and that he believed that he was being attacked. Fritz further testified that, during the attack, one of the men grabbed his face, causing him to be unable to breathe. He stated that he attempted to move the person's hand from his face but did not intend to hurt him.

{¶ 23} The state asserts that Fritz's evidence is insufficient to support an instruction for self-defense, arguing that Fritz's testimony indicates that the force occurred accidentally. We disagree. Under Fritz's version of events, the officers were the aggressors and their actions caused him to believe that he was in imminent danger of bodily harm. Although Fritz testified that the injury to Knight was not intentional, he specifically testified that he attempted to move Knight's hand from his face so that he could breathe. The jury could have reasonably concluded that Fritz purposefully used force to protect himself from his assailants.

{¶ 24} The state further argues that the officers did not employ excessive force and, thus, Fritz was not privileged to resist the officers. The state cites the officers' testimony that they exerted force against Fritz only after he continued flailing and had tried to stand up. Christon had also testified that Fritz had put up "strong resistance" and that the officers "couldn't do anything with him." In light of the testimony of the officers that they landed more than 30 blows to Fritz's body (including his torso, face, and kidneys) and, more important, Fritz's testimony that Knight's hand caused him to be unable to breathe, there was evidence to support a conclusion that the officers used excessive or unnecessary force against Fritz and that Fritz reasonably attempted to remove Knight's hand from his face. Accordingly, Fritz's counsel should have requested an instruction on self-defense, and he acted unreasonably when he failed to do so.

{¶ 25} In addition, we conclude that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d 373. Although the state provided substantial evidence that Fritz knew that his assailants were police officers, the officers themselves indicated that they punched Fritz as hard as they could more than 30 times; two officers indicated that they punched Fritz in the face and one officer admitted to punching Fritz in the kidneys. Knight testified that he had his hands in the area of Fritz's neck or face, and Fritz stated that the officer's hand caused him to be unable to breathe. In our judgment, there is a reasonable probability that the jury, if given an instruction on self-defense, might have

concluded that Fritz had acted in self-defense when he injured Knight's hand while trying to remove it from his face. Accordingly, we cannot conclude that Fritz was not prejudiced by his trial counsel's conduct.

{¶ 26} Fritz has also claimed that he was entitled to an instruction on resisting arrest. Because Fritz's counsel requested a jury instruction on resisting arrest, this argument does not implicate his ineffective assistance of counsel assignment of error. We further note that Fritz has acknowledged that he was not charged with resisting arrest and that resisting arrest is not a lesser-included offense of assault on a police officer. Accordingly, Fritz was not entitled to an instruction on resisting arrest.

{¶ 27} The second assignment of error is sustained.

{¶ 28} III. "The trial court erred in failing to make appropriate findings, imposing a sentence contrary to law, and in sentencing appellant excessively in view of the prevailing circumstances."

{¶ 29} In his third assignment of error, Fritz asserts that his sentence is not supported by the record. In light of our ruling on his second assignment of error, Fritz's third assignment of error is overruled as moot.

{¶ 30} The judgment of the trial court will be reversed and the cause remanded for further proceedings.

Judgment accordingly.

FAIN and DONOVAN, JJ., concur.