[Cite as *State v. Rac*, 2019-Ohio-893.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27536 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-4002 |
| | : | |
| DAVOR RAC | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of March, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellant

ADELINA E. HAMILTON, Atty. Reg. No. 0078595, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellee

MICHAEL T. GMOSER, by LINA N. ALKAMHAWI, Atty. Reg. No. 0075462, Butler County Prosecutor's Office, Appellate Division, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011

Attorney for Amicus Curiae, Butler County Prosecutor's Office

SARAH C. LARCADE, Atty. Reg. No. 0095905, and ELIZABETH A. WELL, Atty. Reg. No. 0087750, 3976 North Hampton Drive, Powell, Ohio 43065
    Attorneys for Amicus Curiae, Ohio Crime Victim Justice Center

SARAH GROSSNICKLE, Atty. Reg. No. 20869, 1000 Louisiana Street, Suite 6800, Houston, Texas 77002
    Attorney for Amicus Curiae, The Innocence Project, Inc.

ALEXIS AGATHOCLEOUS, Atty. Reg. No. 0002298, 40 Worth Street, Suite 701, New York, New York 10013
    Attorney for Amicus Curiae, The Innocence Network, The Innocence Project, Inc., and The Ohio Innocence Project

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** A jury found Davor Rac not guilty of a single count of domestic violence under R.C. 2919.25(A). With leave of this Court, the State of Ohio appeals from the trial court's decision to instruct the jury regarding the fallibility of human memory. As we find that the trial court erred by giving the challenged preliminary jury instructions in this case, the State's assignment of error is sustained.

### *Factual Background and Procedural History*

**{¶ 2}** On December 30, 2016, a Montgomery County grand jury indicted Rac on one count of domestic violence, based on Rac's alleged assault on his live-in girlfriend. Because Rac had been convicted of two or more prior domestic violence offenses,[1] this offense was charged as a third-degree felony under R.C. 2919.25(D)(4). The matter proceeded to a jury trial.

---

[1] Prior to trial, the parties entered a joint stipulation as to the two prior convictions; Rac waived a jury trial on those elements of the felony domestic violence offense. (*See* Tr. 13).

**{¶ 3}** Over the State's objection, after the jury was empaneled, but before opening statements, the trial court read to the jury "preliminary instructions" that included the following:

It is for you alone to decide the believability of witnesses and the weight to give their testimony. In making these decisions you will apply the tests of truthfulness that you apply in your daily lives. These tests include the appearance of each witness on the stand; the witness'[s] manner of testifying; the reasonableness of the testimony; the opportunity the witness had to see, hear and know the things about which he or she testified; the witness'[s] accuracy of memory, frankness or lack of it[,] intelligence, interest and bias, if any[;] together with all the facts and circumstances surrounding the testimony. In applying these tests, you will assign to the testimony of each witness such weight as you deem proper.[2]

*Importantly, imperfect memory is the norm. Memory is imperfect and is susceptible to distortion and loss because human memory does not work like a video camera simply accurately recording events we see and hear so that we need only recall them later. Rather, memory is an adaptive process based upon reconstruction itself based upon a witness'[s] biases and experiences. Memory is not infallible and it should not be treated as such.*

*Errors in memory are often driven by bias and experience because human brains are geared to look for regularities in the world. Indeed, people*

---

[2] This paragraph is consistent with *Ohio Jury Instructions*, CR Section 409.05 (Rev. Aug. 15, 2012).

*may actually remember nonexistent information based upon their expectations. Eyewitnesses, jurors and judges are not immune to this reality. This is not abnormal. If we think an event should've happened in a certain way on the basis of our previous experience we're likely to think that the event did, indeed, happen in that fashion even if it did not.*

*Previously learned information, including experiences and biases, can influence the learning of new information. Whatever happens in an event becomes associated not just with the elements actually present in the event but also what we expect to be present based upon past experiences and biases.*

*We have known for decades that the passage of time between experiencing an event and later recalling it may well adversely affect accurate recall of the memory. This is because recent memories compete with older memories at the time of retrieval and simply retrieving a memory can make it subject to alteration or even elimination.*

*For example, memory distortion can occur unconsciously merely with retelling. Repeated questioning about an event can increase a witness'[s] confidence in the accuracy of the memory. Leading and misleading questions can imply facts not actually presented into evidence by a witness. Consider the difference in these two questions – when did you see the gun versus did you see a gun. Slight variations in the wording of questions can result in memory distortion. For example, asking how fast was the black car going when it slammed into the white car can result in a*

*memory for increased speed as opposed to merely asking how fast was the black car going when it contacted the white car. Indeed, a question using the word "slammed" is more likely to elicit false memories of broken glass in an accident.*

*The general belief that confident detailed memories are always accurate and reliable is contrary to research suggesting that the opposite is quite possible[:] that confidently recalled memories can sometimes be inaccurate and that real memories are not always highly confident or detailed.*

*In s[um], eyewitness memory should not be considered indelible even if the events were traumatic. Witnesses'[s] biases and experiences will change over time. New information or misinformation can alter memory.*

*A witness'[s] confidence in accuracy is no guarantee that memory is indeed accurate because humans have a tendency to fill in gaps in any given memory.*

You are not required to believe the testimony of any witness simply because the testimony was given under oath. You may believe or disbelieve all or part of the testimony of any witness.[3]

(Emphasis added.) (Tr. 167-169).

{¶ 4} In its case in chief, the State presented the testimony of Rac's girlfriend, Wanda, and that of two police officers who responded to Wanda's complaint. Wanda

---

[3] The final paragraph also is taken from *Ohio Jury Instructions*, CR Section 409.05 (Rev. Aug. 15, 2012).

testified that she and Rac had dated "[o]n and off" for four or five years prior to the night in question. On December 24, 2016, the two were living together in a pay-by-the-week motel in Miami Township. Wanda, who was working nights, awoke at about 3 p.m. and told Rac that she wanted to go to Kroger for groceries before the store closed at 6 p.m. Rac expressed anger that Wanda was leaving immediately after getting up. When Wanda returned from grocery shopping, Rac, still "in a bad mood," left the hotel room and returned with a six-pack of beer. To avoid confrontation, Wanda went to bed, while Rac sat in a chair in front of the television, drinking.

{¶ 5} Wanda testified that when she awoke later that night, Rac was "passed out" in the same chair, but soon woke up "pretty drunk" and "just started cussing." According to Wanda, Rac walked over and punched the refrigerator twice, then picked up a chair as if to throw it at Wanda, but instead threw it to the floor. Rac next pulled from the refrigerator a ham that Wanda had received as a Christmas gift, cutting it "real violently" while talking about how much he wanted to kill Wanda. He threw the knife into the sink and ran toward Wanda, shoving her head and neck "down into [her] shoulder blades," causing pain that lasted nearly two weeks. When Rac stepped away, Wanda grabbed her coat, phone, and purse and fled the room. She sat in her car for about 10 minutes before returning to the room to see if Rac had "calmed down." When Rac immediately began yelling, Wanda left the room again and called the police. Wanda waited about 15 minutes for two police officers to arrive, then admitted the officers to the hotel room with her key card. On cross-examination, Wanda acknowledged that she did not seek medical treatment for her neck pain and had no visible signs of injury.

{¶ 6} Officer Crystal Hart of the Miami Township police department testified that

she met Officer Shawn Todd and a "frightened," tearful Wanda outside the motel. After reporting that her boyfriend had been drinking and had assaulted her by "slamm[ing]" his hands down on her head, Wanda used her key card to let Officers Hart and Todd into the motel room. Inside, Officer Hart saw dents in the refrigerator and several steak knives in the sink. The officer said that Rac, who was sitting in a chair watching television, was "nonchalant" at first, not even acknowledging the officers' presence, but became increasingly "aggressive" in response to their questions. When Rac began yelling at Wanda and calling her names, Officers Hart and Todd took him into custody to avoid disrupting other sleeping motel guests. Rac was non-compliant and "very combative," even as the officers tried to help him put on some pants before taking him outside. Based on her experience, Officer Hart testified that Rac "absolutely" was intoxicated, with a strong odor of alcohol, slurred speech, and lack of balance. The officers placed Rac in Officer Todd's cruiser. Officer Hart confirmed that Wanda declined to have medics called and had no obvious signs of injury.

{¶ 7} Officer Todd testified similarly regarding his interactions with Wanda and Rac shortly before midnight on December 24, 2016. He said that Wanda was crying and "visibly shaken" when he arrived outside the motel. He detected nothing to suggest that Wanda was impaired by drugs or alcohol. Once inside the motel room, he saw Rac seated in front of a television wearing only underwear. Rac looked at the officers, then turned back around and resumed watching television. Officer Todd opined that Rac was intoxicated and "seemed to have mood swings;" he would act dismissively of the officers, have "outbursts" of screaming profanities at Wanda and the officers, "[t]hen he'd go back to ignoring me." When the officers asked for his version of events, Rac denied any

altercation with Wanda, but offered no explanation for her allegations. Because Rac kicked at Officer Todd when the officers tried to get him to put on pants, they ultimately took him to the cruiser in his underwear.

{¶ 8} The defense presented no witnesses, but argued in closing that the evidence "boils down to Wanda['s] * * * word" (Tr. 266) and that Wanda "ma[d]e up" the accusation against Rac. (Tr. 267). At the close of evidence, the State repeated its objection to the preliminary instructions regarding memory (Tr. 254); the trial court's final instructions omitted the prior detailed discussion of memory, adhering to the language of *Ohio Jury Instructions*, CR Section 409.05 (Rev. Aug. 15, 2012). (*See* Tr. 259-260). The court further instructed the jury that the parties had stipulated that Wanda was a "household member" for purposes of domestic violence. (Tr. 262). After deliberating, the jury returned a verdict of not guilty. (Tr. 286).

{¶ 9} The State thereafter sought leave to pursue this appeal challenging the trial court's preliminary jury instructions. We granted that motion, as well as motions by the Butler County (Ohio) Prosecutor's Office, the Ohio Crime Victim Justice Center, the Innocence Project, Inc., the Innocence Network, and the Ohio Innocence Project to file amicus curiae briefs.

{¶ 10} In its single assignment of error, the State argues that "[t]he trial court abused its discretion by giving jury instructions regarding the fallacies of memory that represented opinion rather than law."

### Law Regarding Discretionary Appeals

{¶ 11} R.C. 2945.67(A) provides that a prosecuting attorney "may appeal by leave of the court to which the appeal is taken[,] any * * * decision, except the final verdict, of

the trial court in a criminal case." That provision grants a court of appeals "discretionary authority to review substantive law rulings * * * which result in a judgment of acquittal so long as the judgment itself is not appealed." *State v. Bistricky*, 51 Ohio St.3d 157, 555 N.E.2d 644 (1990), syllabus. Even where principles of double jeopardy preclude retrial so that no current controversy exists, appellate review is permitted if "the underlying legal question is capable of repetition yet evading review." (Citations omitted.) *Id.* at 158.

{¶ 12} Courts have refused to allow State appeals challenging jury instructions where any error was limited to the facts of the particular case and the State does not claim that the instruction incorrectly stated the law. *See, e.g., State v. Gott*, 6th Dist. Lucas No. L-11-1086, 2011-Ohio-3608, ¶ 15. Here, however, the trial court has signaled its intent to use in future cases the same preliminary jury instructions given during Rac's trial (*see* Tr. 4-20), and the State contends that those instructions represent an incorrect statement of law. Because, from the State's perspective, the propriety of the instructions is an issue "capable of repetition yet evading review," *see Bistricky* at 158, we granted the State's motion for leave to pursue this discretionary appeal.

### *Standard of Review Regarding Preliminary Jury Instructions*

{¶ 13} "The purpose of jury instructions is to properly guide the jury" in deciding questions of fact based on the applicable substantive law. *Griffis v. Klein*, 2d Dist. Montgomery No. 19740, 2004-Ohio-3699, ¶ 48. With regard to preliminary jury instructions, Crim.R. 30(B) provides:

> At the commencement and during the course of the trial, the court may give
> the jury cautionary and other instructions of law relating to trial procedure,
> credibility and weight of the evidence, and the duty and function of the jury

and may acquaint the jury generally with the nature of the case.

{¶ 14} Crim.R. 30(B) "plays an important part in the trial process." *State v. Comen*, 50 Ohio St.3d 206, 209, 553 N.E.2d 640 (1990). "Preliminary instructions prepare the jury for trial [by] providing orientation so the jury is properly informed as to its duties and responsibilities." *Id.* "A trial court, however, is not required to give preliminary instructions," but may do so at its discretion. *State v. Grant*, 67 Ohio St.3d 465, 476, 620 N.E.2d 50 (1993). *See also* Mont. Co. C.P.R. 1.23(K)(2)(a).

{¶ 15} Although a trial court "has broad discretion to decide how to fashion jury instructions," such instructions must "present a correct, pertinent statement of the law that is appropriate to the facts" of the case. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, citing *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4764, 24 N.E.3d 1147, ¶ 5; *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993). Accordingly, "a court should not give an instruction unless it is specifically applicable to the facts in the case." *State v. Fritz*, 163 Ohio App. 3d 276, 2005-Ohio-4736, 837 N.E.2d 823, ¶ 19 (2d Dist.), citing *State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981). "A trial court has discretion to determine whether the evidence adduced at trial was sufficient to warrant an instruction." *State v. Austin*, 8th Dist. Cuyahoga Nos. 106215 and 106530, 2018-Ohio-3048, ¶ 54, citing *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72. "In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a [particular] jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *State v. Stevens*, 2017-Ohio-498, 85 N.E.3d 119, ¶ 37 (12th Dist.), citing *State v. Davis*, 2016-Ohio-1166, 61 N.E.3d 650, ¶ 35

(12th Dist.).

{¶ 16} A trial court's actions as to preliminary jury instructions should not be disturbed absent an abuse of discretion. *State v. Valentine*, 2d Dist. Montgomery No. 13192, 1992 WL 137101, *3 (June 19, 1992), citing *State v. Frost*, 14 Ohio App.3d 320, 322, 471 N.E.2d 171 (11th Dist.1984). The facts and circumstances of the case are relevant in determining whether a trial court abused its discretion in giving a particular instruction. *State v. Grissom*, 2d Dist. Montgomery No. 25750, 2014-Ohio-857, ¶ 30, citing *State v. Fair*, 2d Dist. Montgomery No. 24388, 2011-Ohio-4454, ¶ 65. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary," *Id.*, citing *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. "An abuse of discretion includes a situation in which the trial court did not engage in a 'sound reasoning process'." *Id.*, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶14; *see also State v. Underwood*, 2d Dist. Montgomery No. 26711, 2016-Ohio-1101, ¶ 9 (abuse of discretion includes decisions that are "grossly unsound, unreasonable, illegal, or unsupported by the evidence").

{¶ 17} A different standard of review is implicated when an appellant contends that a jury instruction misstated the applicable law, however. *See, e.g., State v. Glenn*, 2d Dist. Montgomery No. 27639, 2018-Ohio-2326, ¶ 20 ("Although we generally review trial court decisions related to * * * proper jury instructions for an abuse of discretion, * * * [w]e review questions of law de novo."). "Whether jury instructions correctly state the law is a legal issue that an appellate court reviews de novo." *State v. Echevarria*, 8th Dist. Cuyahoga No. 105815, 2018-Ohio-1193, ¶ 27, citing *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135; *State v. Brown*, 2016-Ohio-1358, 62 N.E.3d 945,

¶ 71 (11th Dist.). "If * * * the jury instructions incorrectly state the law, then an appellate court will conduct a de novo review to determine whether the incorrect jury instruction probably mislead [sic] the jury in a manner materially affecting the complaining party's substantial rights.' " *Id.*, quoting *State v. Barker*, 11th Dist. Portage No. 2010-P-0044, 2014-Ohio-522, ¶ 91.

{¶ 18} Under either standard of review, a jury instruction to which an objection has been made " 'must be viewed in the context of the overall charge, * * *' rather than in isolation." *State v. Burchfield*, 66 Ohio St.3d 261, 262, 611 N.E.2d 819 (1993), quoting *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus. Overall, "[t]he relevant principle for jury instructions is not one of abstract correctness, but is whether an instruction – even if a correct statement of the law – is potentially misleading." *State v. Banks*, 2015-Ohio-5413, 56 N.E.3d 289, ¶ 47 (8th Dist.), quoting *White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, at ¶ 52.

### *Preliminary Jury Instructions at Issue*

{¶ 19} The State urges that the trial court both abused its discretion and committed "an unmistakable error of law" by instructing the jury as it did about the fallibility of memory. More specifically, the State argues that the trial court adopted "the untested and unproven opinions of" a single, non-testifying expert in the field of memory[4] and presented those opinions to the jury as statements of law, even though they were "wholly

---

[4] The expert on whom the trial court relied (*see* Tr. 6, 10) is Dr. Craig Stark, a professor of neurobiology and behavior at the University of California, Irvine. According to the State, during the trial of *State v. Pettiford*, 2d Dist. Montgomery No. 27490, Montgomery C.P. No. 2016-CR-2713 (*see* ¶ 36, below), the trial court also indicated that it had conferred with Dr. Stark in crafting the memory instructions at issue. (*See* Brief of Appellant, p. 10, fn. 2).

unsupported by law" and in some instances "may very well be unsupported by fact."

a. *Alleged Error Regarding Substance of Instructions*

**{¶ 20}** The State, which bears the burden on its appeal, does not provide citations to support its assertion that the preliminary jury instructions about memory given by the trial court were "wholly unsupported by law." Moreover, after reviewing the legal precedents advanced in the appellate briefs, we do not agree that the instructions given by the trial court were completely devoid of legal support. Although the Ohio Supreme Court has not addressed the specific issue now before us, this Court previously has opined, in dicta, that the factors currently applied to evaluate the credibility of eyewitness identifications may not fully reflect "the significant advancement of scientific understanding of memory." *State v. Mayberry*, 2d Dist. Montgomery No. 27530, 2018-Ohio-2220, ¶ 16, fn. 2; *State v. McComb*, 2017-Ohio-4010, 91 N.E.3d 255, ¶ 32, fn. 1 (2d Dist.); *State v. Moody,* 2d Dist. Montgomery No. 26926, 2016-Ohio-8366, ¶ 12, fn. 3; *State v. Frazier*, 2016-Ohio-727, 60 N.E.3d 633, ¶18, fn. 1 (2d Dist.). Furthermore, authority from other jurisdictions offers support for certain discrete jury instructions regarding the fallibility of human memory. *See, e.g., State v. Henderson*, 208 N.J. 208, 27 A.3d 872 (2011); *Commonwealth v. Gomes*, 470 Mass. 353, 22 N.E.3d 897 (2015); *State v. Mahmoud*, 2016 ME. 135, 147 A.3d 833 (2016).

**{¶ 21}** In what generally appears to be recognized as the seminal case on this issue, the New Jersey Supreme Court determined that the scientific evidence presented had proven that "memory is malleable" and that "an array of variables can affect and dilute memory." *Henderson* at 247. Although the specific issue before that court concerned the reliability of an eyewitness identification obtained through a photo array, *id.* at 222-224,

the court in *Henderson* reviewed a wide range of scientific studies and a number of variables that such studies indicate may affect a witness's memory, *id.* at 247-274, before concluding that "enhanced jury instructions" would lessen the need for expert testimony regarding the factors that impact the reliability of eyewitness testimony. *Id.* at 298. The Maine Supreme Judicial Court likewise has concluded that evolving scientific research regarding memory and the reliability of eyewitness identifications supports, "*where relevant*, * * * instruct[ing] jurors on the reliability of eyewitness identification." (Emphasis added). *Mahmoud* at ¶ 13, 14.[5]

{¶ 22} In *Gomes*, the Massachusetts Supreme Judicial Court held that the trial court in the case before it did not err by declining to give specific jury instructions about eyewitness identification requested by the defendant, because the defendant "offered no expert testimony, scholarly articles, or treatises that established that [the principles set forth in the proposed instructions] were 'so generally accepted that ... a standard jury instruction stating [those principles] would be appropriate.' " (Ellipsis sic.) *Gomes* at 353. The court then continued its analysis, however, "tak[ing] this opportunity to revisit [its] jurisprudence regarding eyewitness identification jury instructions * * *." *Id.* at 360.[6]

---

[5] The court in *Mahmoud* specifically noted that such an instruction ordinarily would *not* be appropriate "in instances when the identified person is already known to the witness." *Mahmoud* at ¶ 14.

[6] *See also Bomas v. State*, 412 Md. 392, 423, 987 A.2d 98 (2010), where Maryland's highest court affirmed a lower court holding that proffered expert testimony about the unreliability of eyewitness identifications was inadmissible, for reasons including "[in]adequate citation to studies or data" and an "insufficient[ ] relat[ionship] to the identifications at issue." Nevertheless, that court, too, discussed the prospect of updating the state's standard criminal jury instructions to reflect recent scientific advances. *Id.* at 418.

**{¶ 23}** After reviewing a report compiled by "the Supreme Judicial Court Study Group on Eyewitness Evidence" it previously had convened to explore the issue, *id.* at 354, 360-361, the court in *Gomes* proposed "a new provisional jury instruction" incorporating five "generally accepted principles" about eyewitness identification it found to have been established through scientific research. *Id.* at 376, 379-388.[7] The principles there deemed to be "so generally accepted" as to warrant inclusion in a model jury instruction included:

- Human memory does not function like a video recording but is a complex process of three stages: acquisition, retention, and retrieval.

- An eyewitness's expressed certainty in an identification, standing alone, may not indicate the accuracy of the identification, especially where the witness did not describe that level of certainty when the witness first made the identification.

- High levels of stress can reduce an eyewitness's ability to make an accurate identification.

- Information that is unrelated to the initial viewing of the event, which an eyewitness receives before or after making an identification, can influence the witness's later recollection of the memory or of the identification.

- A prior viewing of a suspect at an identification procedure may reduce the reliability of a subsequent identification procedure in

---

[7] The "Study Group" and subsequent actions outlined in *Gomes* apparently are part of a process instituted in Massachusetts for generating provisional jury instructions and soliciting public comment thereon; no comparable process exists in Ohio.

which the same suspect is shown.

*Id.* at 369-376.

{¶ 24} Similarly, Judge Mark W. Bennett of the United States District Court for the Northern District of Iowa advocates for the adoption of model jury instructions on the topic of witness credibility, and regularly uses such instructions in cases over which he presides. *See* Bennett, *Unspringing the Witness Memory and Demeanor Trap: What Every Judge and Juror Needs to Know About Cognitive Psychology and Witness Credibility*, 64 Am.U.L.Rev. 1331, 1374-1375 (2015), fn. 280.

{¶ 25} Nevertheless, despite such examples of legal support for some of the general concepts embodied within the preliminary jury instructions at issue in this case, we cannot determine from the record before us whether the entirety of the preliminary jury instructions given by the trial court represents "a correct, pertinent statement of the law" based on the current scientific consensus about human memory "that is appropriate to the facts" of this case. *See White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, at ¶ 46. Notably, the State has failed to sustain its burden as to this assignment of error by identifying any controlling law to the contrary. Absent such adverse authority, we cannot say that the trial court committed an error of law with respect to its preliminary jury instructions.

{¶ 26} We also lack a sufficient basis to conclude that the trial court's preliminary jury instructions taken as a whole amount to a correct statement of law. Neither the Ohio Supreme Court nor any Ohio court of appeals has approved instructions such as those given by the trial court in this instance. Where an opinion is based on science that has not previously been formally accepted as reliable, a trial court errs by permitting that

opinion to be presented to a jury without first determining its reliability and relevance. *See State v. Shalash*, 2014-Ohio-2584, 13 N.E.3d 1202, ¶ 46, 52 (12th Dist), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[8] Parties must be permitted to explore whether an opinion "both rests on a reliable foundation and is relevant to the task at hand." *See Daubert* at 597; *see also Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 24-26.

{¶ 27} In this case, the trial court completely bypassed that adversarial vetting process, denying the parties any meaningful opportunity to explore the basis for the opinions on which the court's preliminary instructions were based. In so doing, the trial court presented to the jury by way of a preliminary jury instruction what it would have been error to present through an expert witness who had not been subjected to examination prior to testifying. *See Shalash* at ¶ 52. Indeed, the problem identified in *Shalash* was compounded herein by the fact that the expert's (Dr. Stark's) opinions were presented not simply as witness testimony for the jury to consider, but rather as *statements of law* coming from the court itself. The record does not contain sufficient evidence "from which reasonable minds might reach the conclusion [about the fallibility of memory] sought by the instruction" the trial court gave. *See Stevens*, 2017-Ohio-498, 85 N.E.3d 119, at ¶ 37. Therefore, although we cannot determine that the trial court committed an error of law, we determine that the trial court abused its discretion by administering preliminary jury instructions without first establishing on the record that that such instructions represented

---

[8] This court also has acknowledged that "[t]here is logic in the contention that a court should consider a challenge to an expert's testimony prior to ruling" on the issue that opinion would address. *Heltzer-Young v. Elano Corp.*, 2d Dist. Greene No. 2013-CA-32, 2014-Ohio-1104, ¶ 50.

a correct statement of law based on the scientific consensus about human memory.

{¶ 28} This is not to suggest that no means existed by which a jury properly could have been presented with information about memory other than a verbatim recitation of the existing Ohio Jury Instructions. The trial court failed to utilize other means at its disposal that may have created a proper framework for conveying that information to the jury. For example, under Evid.R. 614, a trial court "may, in the interest of justice, act impartially in *developing facts* germane to an issue of fact to be determined by the jury." (Emphasis added.) *State v. Davis*, 79 Ohio App.3d 450, 454, 607 N.E.2d 543 (4th Dist.1992). The trial court in this case did not employ Evid.R. 614 to call witnesses regarding the scientific data about memory; the record does not establish the necessary foundation for the preliminary instructions that were given.

{¶ 29} Unlike the records in *Henderson*, 208 N.J. 208, 27 A.3d 872, and *Mahmoud,* 2016 Me. 135, 147 A.3d 833, the record here does not reflect a plethora of scientific data supporting the concepts detailed in the trial court's memory instruction. Instead, the record before us contains only a synopsis of the trial court's own understanding of current scientific opinion about memory, apparently based largely on attending a single presentation by (and perhaps independently conferring with) a single expert in the field. (*See* Tr. 6-10).[9] As a result, the circumstances here are more akin to those in *Gomes*, where the Massachusetts Supreme Judicial Court affirmed the trial court's refusal to give

---

[9] Although one amicus curiae brief includes attachments proffered as supplementary scientific evidence, those attachments are not part of the record below and thus are not properly before us for purposes of this appeal. *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E. 500 (1978), paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.").

proposed jury instructions in the absence of "expert testimony, scholarly articles, or treatises" substantiating the reliability of the principles set forth in those instructions. *See Gomes*, 470 Mass. 353, 22 N.E.3d 897.

{¶ 30} Similarly, Rac could have offered expert testimony regarding the fallibility of memory, the State could have examined that expert outside the jury's presence in order to challenge the reliability and relevance of the proposed testimony, and the trial court, in the exercise of its discretion, could have decided whether to admit that testimony subject to cross-examination. If the expert testimony were admitted, the trial court then could have instructed the jury on the appropriate factors to be used in weighing that evidence, pursuant to both *Ohio Jury Instructions*, CR Sections 409.21(1) and (3) and 409.05.

{¶ 31} Absent either a proper evidentiary foundation or existing Ohio Supreme Court authority for the preliminary jury instructions given, the trial court abused its discretion by instructing the jury, on its own initiative[10] and over the State's objection, as it did in this case. We agree with the State's argument that the trial court abused its discretion in giving the jury instructions that it did, but we disagree that the trial court committed an error of law.

---

[10] The fact that no party requested such an instruction is significant. "[I]t is not required in our adversary system that the court, *especially absent a supportable, requested instruction*, educate the jury on the science underlying [the law applicable to eyewitness identification]. *Ideally*, if warranted, *the accused would call an expert on eyewitness reliability* or otherwise bring the rationale for [the applicable law] to the jury's attention." (Emphasis added.) *State v. Simpson*, 2d Dist. Montgomery No. 25069, 2013-Ohio-1072, ¶ 72 (Froelich, J., concurring). There we cited *Bomas*, 412 Md. at 418, 987 A.2d 98, as an example of another state's highest court suggesting that updated jury instructions regarding eyewitness testimony may be warranted. As with *Henderson*, *Gomes* and *Mahmoud*, however, both *Simpson* and *Bomas* involved potentially suspect eyewitness identifications, and thus are not directly on point where (as here) the defendant was well known to the complainant. The principle, however, is very similar.

b. *Alleged Error Regarding Application of Instructions in Rac's Case*

**{¶ 32}** We further determine that the trial court abused its discretion by instructing the jury in the manner it did under the facts of this particular case. Significantly, the critical issue in *Henderson*, *Gomes* and *Mahmoud* was the reliability of an eyewitness's identification of the defendant. Indeed, four of the five "generally accepted principles" identified by the Massachusetts Supreme Judicial Court were directed specifically toward eyewitness identification evidence. *See Gomes*, 470 Mass. at 369-376, 22 N.E.3d 897. In contrast, the complainant's identification of Rac in this case never was in doubt (*see* fn. 5, above); rather, Rac's defense rested on the theory that his girlfriend of four or more years had fabricated her alleged injury and/or the entire incident.[11] The challenged instructions were not "specifically applicable to the facts of the case," and thus were not warranted by the evidence presented. *See Fritz*, 163 Ohio App. 3d 276, 2005-Ohio-4736, 837 N.E.2d 823, ¶ 19; *see also Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157; *Stevens*, 2017-Ohio-498, 85 N.E.3d 119, ¶ 37; *Davis*, 2016-Ohio-1166, 61 N.E.3d 650, ¶ 35.[12]

**{¶ 33}** We also are not persuaded that the trial court's preliminary memory

---

[11] It is impossible to know why the jury found the defendant not guilty. Arguably, the jury may have accepted Rac's argument that the complainant lied about everything, or may have found that something happened but there was insufficient proof that Rac "knowingly" (R.C. 2901.22(B) and *Ohio Jury Instructions*, CR Section 417.11 (Rev. Jan. 10, 2015)) (see Tr. 260-261) "caused or attempted to cause" (*Ohio Jury Instructions*, CR Sections 417.23 and 523.02) (see Tr. 261-262) "physical harm" (R.C. 2901.01(A)(3) and *Ohio Jury Instructions*, CR Section 519.25 (Rev. May 3, 2014)) (see Tr. 262) to Wanda.

[12] Despite the State's pretrial representation that no "big memory issue" was expected in this case (*see* Tr. 4), the trial court may not have known when it gave the preliminary instructions what the testimony would be. However, the court did not repeat the detailed information pertaining to memory in its final instructions given after the close of evidence, thereby underscoring the irrelevance and potentially misleading nature of the preliminary instruction.

instruction was appropriate simply because memory arguably is at issue whenever any witness testifies. As noted in our discussion above, because no expert testimony was presented, we lack any basis in the record for concluding that the entirety of the instruction delivered by the trial court accurately represents the current consensus of scientific opinion regarding memory. In contrast to *Gomes*, where the trial court was found not to have erred by *refusing to give an instruction* in the *absence of expert testimony*, the trial court here did err by *giving an instruction* in the *absence of evidentiary support*.

{¶ 34} Furthermore, notwithstanding the trial court's stated goal of fashioning "even-handed" memory instructions that "cut both ways" as to the parties' respective witnesses (Tr. 10), the form and sheer volume of the memory instructions at issue here raise the prospect that such instructions may have placed undue emphasis on the importance of the issue of memory relative to the jurors' other responsibilities in assessing evidence. A "potentially misleading" instruction may be erroneous even if it represents a correct statement of the law. *See Banks*, 2015-Ohio-5413, 56 N.E.3d 289, at ¶ 47. Particularly where, as here, the defendant presents no witnesses, instructions that stress the unreliability of eyewitness testimony without enumerating factors that may be used to assess the reliability of the prosecution witnesses' testimony may not advance the neutral purpose the trial court had intended.

{¶ 35} As observed by another Ohio appellate court, "*Henderson*[, 208 N.J. 208, 27 A.3d 872] is not the law in Ohio, and our supreme court has yet to create any precedent that would allow us as an intermediate court to deviate from [existing standards for evaluating eyewitness testimony]." *State v. Ranzy*, 8th Dist. Cuyahoga No. 97275, 2012-Ohio-2763, ¶ 33. We also do not have the benefit of an established process for officially

vetting proposed jury instructions derived from evolving scientific knowledge, such as that outlined in *Gomes*. Accordingly, while we do *not* hold that a trial court commits error by giving *any* preliminary instruction regarding identification and memory, we conclude, based on this record, that the trial court abused its discretion by giving the challenged preliminary jury instructions in this particular case.

### *Conclusion*

{¶ 36} Also before this Court are the State's appeals from similar jury instructions given by the same trial court in *State v. Pettiford*, 2d Dist. Montgomery No. 27490 (Montgomery C.P. No. 2016-CR-2713), and *State v. Mabberly*, 2d Dist. Montgomery No. 27729 (Montgomery C.P. No. 2016-CR-2397). Each opinion confronts a distinct instruction, albeit differing only slightly from the others, delivered within the context of a distinct record; nonetheless, each opinion, though based upon somewhat different reasoning, holds that the trial court erred by delivering the instruction. Collectively, the opinions can support the following three conclusions.

{¶ 37} The first conclusion that can be reached from the three decisions collectively is that, unless the Ohio Supreme Court rules otherwise, information concerning memory and identification can be presented by expert testimony subject to the adversarial process, but if so presented, a preliminary or final jury instruction that appears to support or not support such testimony is inappropriate.

{¶ 38} The second conclusion is that a concise, limited, and neutral memory or identification instruction which accords with controlling precedent may be appropriate; whether such an instruction may require pre-trial expert evidence, subject again to the adversarial process, would depend on the precise wording of the instruction.

{¶ 39} Third, the reviewed instructions in each case do not comply with these conclusions.

### Conclusion

{¶ 40} For the foregoing reasons, the State's assignment of error is sustained insofar as we find that the trial court abused its discretion in instructing the jury as it did. However, this decision has no impact on Rac's final judgment of acquittal, because he cannot be twice placed in jeopardy. *State v. Pawelski*, 178 Ohio App.3d 426, 2008-Ohio-5180, 898 N.E.2d 85, ¶ 28 (2d Dist.), citing *State v. Hensley*, 2d Dist. Montgomery No. 18886, 2002 WL 628626 (April 19, 2002).

. . . . . . . . . . . . .

TUCKER, J., concurs.

WELBAUM, P.J., concurs:

{¶ 41} I concur with the judgment in this case, but I disagree with the language in the majority opinion to the extent it suggests that, in the absence of Ohio Supreme Court precedent, trial courts may instruct juries about the science of memory or identification by conducting a pretrial *Daubert* hearing, or otherwise, and that after such evidence has been submitted, courts may instruct jurors in detail on witness memory. As set forth in *State v. Pettiford*, 2d Dist. Montgomery No. 27490, I believe that at this stage of development in Ohio, the science of witness memory relating to identification or otherwise is the proper subject of expert testimony rather than the use of *Daubert*-fortified jury instructions.

{¶ 42} Furthermore, where expert testimony on the subject has been provided to the jury, trial courts should confine the jury instructions to general statements about witness credibility. Experts are simply witnesses like any others, and to specifically instruct juries in detail on what an expert has said unduly emphasizes the testimony.

{¶ 43} I believe the trial court committed an error of law and also abused its discretion in giving the jury enhanced jury instructions on the subject of witness memory in the absence of controlling authority from the Ohio Supreme Court.

{¶ 44} Otherwise, I agree with the decision to sustain the State's assignment of error.

Copies sent to:

Mathias H. Heck
Andrew T. French
Adelina E. Hamilton
Michael T. Gmoser
Lina N. Alkamhawi
Sarah C. Larcade
Sarah Grossnickle
Elizabeth A. Well
Alexis Agathocleous
Elizabeth Berry
Hon. Steven K. Dankof